· FEDERAL REPUBLIC
OF YUGOSLAVIA,
Plaintiff,

v.

PARK–71ST CORPORATION and
Darko Silovic, Defendants,

and

The Republic of Slovenia, The Republic of Bosnia and Herzegovina, The Republic of Croatia, and The Republic of Macedonia, Intervening Defendants.

No. 95 CIV. 3659 (AGS).

United States District Court,
S.D. New York.

Oct. 27, 1995.

---

Deyan Ranko Brashich, New York City, for Plaintiff.

Aaron Shmulewitz, Parker Duryee Rosoff & Haft, New York City, for Defendant Park–71st Corporation.

Robert F. Van Lierop, Van Lierop, Burns & Schaap, L.L.P., New York City, for Defendant Darko Silovic.

Mary Jo White, Wendy H. Schwartz, United States Attorney's Office, New York City, for United States Government.

Ritchie T. Thomas, Squire, Sanders & Dempsey, Washington, DC, for Intervenors–Defendants Republics of Bosnia and Herzegovina, Croatia and Macedonia.

John B. Glendon, Pepper, Hamilton & Scheetz, New York City, for Intervenor Republic of Slovenia.

## ORDER

SCHWARTZ, District Judge:

■ This action arises out of a dispute regarding the ownership of Apartment 16/17–B at 730 Park Avenue, New York, New York (the "Property"). Prior to 1992, the Property was occupied by successive Permanent Representatives to the United Nations (the "Ambassadors") of the Socialist Federal Republic of Yugoslavia ("SFRY"). After increasing political crisis, by 1992, the SFRY had allegedly dissolved and Darko Silovic, the Ambassador at that time, vacated the Property.[1]

■ It is undisputed that the Property is considered "blocked property," see 31 C.F.R. § 585.302, and that it may not, without a license[2], be "transferred, paid, exported, withdrawn or otherwise dealt in." 31 C.F.R. § 585.301(a). Specifically, on May 30, 1992, President Bush, invoking his authority under

1. At a conference held on October 25, 1995, Plaintiff stated that it did not agree with the position of all of the other parties before the Court (including the United States of America) that the SFRY had dissolved. The Court declines to resolve this issue for the reason that the same involves a non-justiciable political question.

2. Parties seeking to transfer blocked property must apply for a license from the Office of Foreign Assets Control in the Department of the Treasury ("OFAC"), see, 31 C.F.R. § 585.501 et seq. (licensing policy); 31 C.F.R. § 585.801 (licensing procedure). All transfers of blocked property—including transfers by "attachment, judgment, decree, lien, execution, garnishment, or other judicial process"—are null and void unless authorized by OFAC. 31 C.F.R. § 585.202. In these circumstances, "[t]he judi-

cial process cannot, without a license or other authorization from the Secretary of the Treasury, operate to transfer or create any interest in blocked property." Clark v. Propper, 169 F.2d 324, 327 (2d Cir.1948) (citations omitted), aff'd, Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949) (blocking orders issued under the Trading with the Enemy Act, 50 U.S.C.App. § 1, et seq., the statute upon which the International Emergency Economic Powers Act provisions relevant here are based, prohibited change of title in blocked property, even by judicial appointment of receiver; receiver could not obtain or transfer rights in blocked property). See generally Dames & Moore v. Regan, 453 U.S. 654, 669–674, 101 S.Ct. 2972, 2981–82, 69 L.Ed.2d 918 (1981) (discussing Presidential powers under International Emergency Economic Powers Act).

the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.*, issued Executive Order 12808, 57 Fed. Reg. 23299 (1992). President Bush stated that "the actions and policies of the Government of Serbia and Montenegro, acting under the name of the Socialist Federal Republic of Yugoslavia or the Federal Republic of Yugoslavia ... constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States...." *Id.* President Bush declared a national emergency to deal with that threat and ordered that "all property and interests in the property in the name of the Government of the Socialist Federal Republic of Yugoslavia or the Government of the Federal Republic of Yugoslavia that are in the United States ... are hereby blocked." *Id.*

Plaintiff "Federal Republic of Yugoslavia" (Serbia and Montenegro) ("Plaintiff") seeks a declaratory judgment that it is entitled to sole ownership and possession of the Property. By motion for a preliminary injunction, Plaintiff also seeks temporary possession of the Property until the decision with respect to ownership is made. Plaintiff argues that it is entitled to possession on the grounds that it is the continuation of the SFRY. At a conference held on October 25, 1995, Plaintiff conceded that the ultimate issue of ownership of the Property presents a non-justiciable political question.

Defendant Park 71st Corporation ("Park 71") takes no position regarding ownership or possession of the Property and states that it will abide by any judicial or administrative order that is made. *See* Declaration of Aaron Schmulewitz dated August 15, 1995 at ¶ 7. Park 71 observes "that this dispute appears to be a political question, and may therefore not be justiciable by this Court." *Id.* at ¶ 8.

Defendant Darko Silovic, in his answer dated September 22, 1995 ("Silovic Answer") asserts, as an affirmative defense, that Plaintiff lacks standing and "that this matter presents a non-justiciable political question". Silovic Answer at ¶¶ 6–7.

The United States of America (the "United States") has submitted a Statement of Interest pursuant to 28 U.S.C. § 517 expressing its view that this action should be dismissed in its entirety on the grounds that the issues to be decided are non-justiciable political questions and, as such, are not appropriate for court resolution (the "Statement of Interest").

The Republic of Slovenia ("Slovenia"), the Republic of Bosnia and Herzegovina ("Bosnia and Herzegovina"), the Republic of Croatia ("Croatia") and the Former Yugoslav Republic of Macedonia ("FYROM") have intervened and oppose the relief requested by Plaintiff and each claim an interest in the Property.

Slovenia moves to dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff is not recognized as a sovereign state by the United States and, therefore, lacks the capacity to bring suit in a United States' court and on the grounds that this case presents a nonjusticiable political question.

Bosnia and Herzegovina, Croatia and FYROM in their counterclaim and cross-claim ask for a declaration that the property is jointly owned by those states who are the successors to the SFRY and request the appointment of a custodian or receiver of the Property to preserve the Property for those ultimately found to be the successors in ownership. Further, and in contrast to the defendants, the United States and Slovenia, Bosnia and Herzegovina, Croatia and FYROM contend that while they "agree with Slovenia and the United States that plaintiff's capacity to bring its action is doubtful and that its action raises a specific nonjusticiable political issue, *i.e.*, the rights of the successor states, *inter se*", they, nevertheless, contend that "the case as a whole is justiciable and must not be dismissed". Memorandum of Law of the Republic of Bosnia and Herzegovina, the Republic of Croatia, and the Republic of Macedonia in Response to the Statement of Interest of the United States and the Motion to Dismiss of the Republic of Slovenia at 3.

The Court has carefully considered the submissions of the parties and the arguments of counsel, including the arguments made at a conference held on October 25, 1995 and, for the reasons set forth in the United

States' Statement of Interest and the decision of the Second Circuit in *Can v. United States,* 14 F.3d 160 (2d Cir.1994), Plaintiff's motion for a preliminary injunction is denied and this action (including any and all counterclaims and cross-claims) is hereby dismissed in its entirety on the grounds that the issues to be decided are non-justiciable political questions.

The United States Supreme Court, in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), defined a non-justiciable political question in the following terms:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* 369 U.S. at 217, 82 S.Ct. at 710.

The Second Circuit, in a case presenting issues similar in many ways to those presented in the instant case, relied on the above principles and affirmed the dismissal of a case as presenting non-justiciable political questions. In *Can v. United States,* 14 F.3d 160 (2d Cir.1994), a self-styled class of citizens of the Republic of South Vietnam sought to be named successors-in-interest to assets of the former Republic of South Vietnam located in the United States and to have those assets placed under their control. The Second Circuit concluded that the appellants' claim was non-justiciable and stated:

> The determination of title to the assets of the former South Vietnam is inextricably intertwined with the question of state succession and sovereignty. Although appellants only claim to be successors in interest, not sovereign successors, to their

fallen government, *the settlement of claims of those assets clearly affects executive actions towards the current Hanoi regime and involves decisions constitutionally committed to the executive branch.*

*Id.* 14 F.3d at 165 (emphasis added).

In reaching its conclusion, the Second Circuit referred to the absence of judicial competence to determine issues of succession, even where the succession is to property, rather than power:

> The courts have no standards for judging a claim of succession to a former sovereign, even where that succession is only to property rather than to government power. The recognition of any rights of succession to a foreign sovereign's power is in the first instance constitutionally committed to the executive branch of government, not to the judiciary.

*Can v. United States,* 14 F.3d at 162–63. The Court continued, "[i]t is firmly established that official recognition of a foreign sovereign is solely for the President to determine and, 'is outside the competence' of courts." *Id.* (citations omitted).

The Second Circuit further expressed concern that a grant of the relief requested would interfere with the Executive Branch's foreign policy prerogatives. The Court stated that "[t]here is no question that a judicial decision on who has title to the frozen assets would affect the executive's use of those assets in present or contemplated negotiations". *Can v. United States,* 14 F.3d at 164.

This case involves similar issues to those presented in *Can v. United States,* including, among others, issues of state succession, competing claims to the property of a former state, the allocation of the former's state's property among successors and the ability of the Executive Branch to use the Property in present or contemplated negotiations.

With respect to the request of Bosnia and Herzegovina, Croatia and FYROM for the appointment of a receiver, such relief can not be granted without prior application to and licensing from OFAC. *See* n. 1 *supra.* No such application has been made here. Indeed, counsel for Bosnia and Herzegovina,

Croatia and FYROM conceded at the October 25, 1995 conference that if this Court were to deny the request for the appointment of a receiver, these entities would consider requesting such relief from OFAC. Simply put, the appointment of a receiver would thrust the Court into a political controversy and the domain of the Executive Branch. *See, generally,* Reply Brief of the Republic of Slovenia to the Memorandum of Law of the Republic of Bosnia and Herzegovina, the Republic of Croatia, and the Republic of Macedonia in Response to the Statement of Interest of the United States and the Motion to Dismiss of the Republic of Slovenia at 2–4. The Court further observes that the need for the appointment of a receiver is at best questionable and possibly not ripe for resolution. *Id.* at 4–5.

In sum, a judicial resolution of these issues would not only affect the Executive Branch's options, it would improperly interfere with the Executive Branch's prerogatives as it "would (1) involve an initial policy determination of a kind clearly for nonjudicial discretion, (2) express[ ] lack of the respect due coordinate branches of government, and (3) lead to the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Can v. United States,* 14 F.3d at 164 (quoting *Baker v. Carr,* 369 U.S. at 217, 82 S.Ct. at 710) (internal quotations omitted).

*CONCLUSIONS*

For the reasons set forth above, Plaintiff's motion for a preliminary injunction is denied and this action (including any and all counterclaims and cross-claims) is dismissed in its entirety on the grounds that the issues to be decided are non-justiciable political questions.

SO ORDERED.